STRZELECKI v BLASER'S LAKESIDE INDUSTRIES OF RICE LAKE, INC

Docket No. 69377. Submitted November 4, 1983, at Grand Rapids.— Decided March 22, 1984.

The home of Jacob and Bonita Strzelecki and its contents were totally destroyed by fire. The Strzeleckis and their insurer, Celina Mutual Insurance Company, brought an action against Blaser's Lakeside Industries of Rice Lake, Inc., and William Kranzo, doing business as Kranzo Farm Feed and Supply, the manufacturer and retailer, respectively, of a wood stove which plaintiffs alleged was defectively designed, inadequately tested, and sold without proper warnings regarding its use. The Presque Isle Circuit Court, Robert H. Ferguson, J., granted defendants' motion for a directed verdict and dismissed the action, holding that plaintiffs' proof of damages, based on a replacement cost less depreciation method of valuation, was inadequate to establish the market value of the property and, thus, to make out a prima facie case. Plaintiffs appealed from the order of directed verdict and dismissal, and each of the defendants cross-appealed, raising different issues. *Held:*

1. The proper measure of damages is the market value of the property, both real and personal, at the time of the fire. However, the replacement cost less depreciation method of valuation is not so inferior a method of establishing value that it may not be used to establish prima facie evidence of the amount of damages. The evidence was sufficient to survive a motion for directed verdict; the weight to be given the evidence is a matter for the finder of fact.

2. The trial court did not abuse its discretion in determining that one of plaintiffs' witnesses was qualified to testify as an expert regarding the design of the wood stove.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages §§ 134, 140, 146, 148.
[2] 22 Am Jur 2d, Damages § 326.
  75 Am Jur 2d, Trials § 536.
[3] 22 Am Jur 2d, Damages § 25.
[4] 5 Am Jur 2d, Appeal and Error § 884.
  31 Am Jur 2d, Expert and Opinion Evidence § 26 *et seq.*

1. DAMAGES — MEASURE OF DAMAGES — REAL OR PERSONAL PROPERTY.

The measure of damages to real or personal property injured through negligence, if permanently irreparable, is the difference between its market value before and after the damage; if the injury is reparable and the expense of repairs is less than the market value, the measure of damages is the cost of repairs.

2. DAMAGES — MEASURE OF DAMAGES — PRIMA FACIE EVIDENCE.

The replacement cost less depreciation method of valuation of property permanently damaged by negligence may be sufficient to present prima facie proof of the amount of damages for purposes of avoiding a defendant's motion for a directed verdict on that issue.

3. DAMAGES — MEASURE OF DAMAGES.

Generally, while proof of the amount of damages may not be founded on mere conjecture or speculation, mathematical certainty is not required.

4. WITNESSES — EXPERT WITNESSES — APPEAL — RULES OF EVIDENCE.

A witness may be qualified to testify as an expert based on his or her knowledge, skill, experience, training, or education; qualification of a witness as an expert is within the trial court's discretion and the Court of Appeals will not reverse a trial court's admission or exclusion of expert testimony absent a clear abuse of discretion (MRE 702).

*Jason, Kowalski, Poch & Bartko* (by *Gregory Bartko)*, for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen J. Tresidder)*, for defendant Blaser's Lakeside Industries of Rice Lake, Inc.

*Boyce, While & Werth* (by *Daniel W. White)*, for defendant Kranzo.

Before: MacKENZIE, P.J., and J. H. GILLIS and R. B. BURNS, JJ.

PER CURIAM. Plaintiffs Jacob and Bonita Strze-

lecki and plaintiff Celina Mutual Insurance Company (Celina), the couple's insurer suing in subrogation, brought this product liability suit against the manufacturer of a wood stove, purchased by the Strzeleckis, defendant Blaser's Lakeside Industries of Rice Lake, Inc. (Blaser's), and against defendant William Kranzo, doing business as Kranzo Farm Feed and Supply, the retail seller of the wood stove. As a result of a fire, the Strzeleckis' home and contents were totally destroyed. The fire loss was partially covered by their insurance policy with Celina. The theories of liability asserted by plaintiffs at trial were negligence and breach of warranty; plaintiffs claimed that the fire was caused by defective design of the wood stove, inadequate testing of the stove, and failure to warn. Plaintiffs appeal as of right from an order granting defendants' motion for a directed verdict. We reverse.

The trial court granted defendants' motion for a directed verdict and dismissed plaintiffs' suit on the ground that plaintiffs failed to introduce sufficient proof of damages to make out a prima facie case. More particularly, the court concluded that plaintiffs' proof of damages for loss of the home and contents, based on a replacement cost less depreciation method of valuation, was inadequate to establish the requisite market value of the real and personal property at the time of the fire. Plaintiffs' proofs consisted of evidence establishing the cost of replacing the home, less depreciation based on the age of the home and improvements thereto, and the cost of replacing the personal property destroyed with the home, less depreciation based on the age of each specific item of personalty.

The rule of damages for property loss is as follows:

"It is the settled law of this state that the measure of damages to real property, if permanently irreparable, is the difference between its market value before and after the damage. However, if the injury is reparable, and the expense of repairs is less than the market value, the measure of damage is the cost of the repairs."

*Bayley Products, Inc v American Plastic Products Co,* 30 Mich App 590, 598; 186 NW2d 813 (1971), *lv den* 385 Mich 754 (1971); accord, *O'Donnell v Oliver Iron Mining Co,* 262 Mich 470, 477; 247 NW 720 (1933); *Tillson v Consumers Power Co,* 269 Mich 53, 65-66; 256 NW 801 (1934); *Jackson County Road Comm'rs v O'Leary,* 326 Mich 570, 576; 40 NW2d 729 (1950). This rule applies as well to damages for personal property injured through negligence. See *Wolverine Upholstery Co v Ammerman,* 1 Mich App 235, 242; 135 NW2d 572 (1965). It is undisputed in the present case that the real and personal property was permanently and irreparably injured, and that the property had no value after the fire. Thus, under the above-stated rule, the measure of damages is the market value of the real and personal property at the time the fire occurred.

Whether the replacement cost less depreciation method of valuation may suffice as prima facie proof of market value at the time of the loss is an issue not definitively decided by prior case law in our jurisdiction. Clearly, replacement cost alone, without any deduction for depreciation, is not sufficient evidence of market value at the time of the loss. See *State Highway Comm'r v Predmore,* 341 Mich 639, 642; 68 NW2d 130 (1955); *Bluemlein v Szepanski,* 101 Mich App 184, 192; 300 NW2d 493 (1980), *lv den* 411 Mich 995 (1981). If replacement cost without depreciation was allowed, the

plaintiff would recover an amount as if the property were new at the time it was destroyed. *Bluemlein, supra.* However, in the instant case, plaintiffs' evidence of damages did include deductions for depreciation.

In *Adams v Grand Trunk Western R Co*, 240 Mich 300, 303; 215 NW 375 (1927), where some barns were destroyed by fire, there was evidence of the value of the barns based on reproduction cost less depreciation, and also testimony by one witness as to the value of the barns which was not based on this method; the Court held that the latter uncontroverted testimony "carried the value to the jury, and we do not feel that the other testimony as to value presents reversible error". The *Adams* Court did not express a blanket denunciation of the replacement cost less depreciation method. Also, it is noteworthy that those witnesses who testified as to value based on reproduction less depreciation had no knowledge of how old the barns were when destroyed, which may explain the Court's reliance on the other testimony as carrying the value to the jury. In the present case, the approximate age of the home and improvements, and the personalty, was known.

In more recent cases, the replacement cost less depreciation method has been relied on to establish market value where there was no market for the building destroyed. In *Twenty-Two Charlotte, Inc v Detroit*, 294 Mich 275, 284-286; 293 NW 647 (1940), the Court approved reliance on replacement cost less depreciation as a method for establishing the "cash value" of the property for tax assessment purposes, noting the difficulty of determining the price likely to be obtained at a private sale due to the economic depression and paucity of sales of comparable property. In *Losinski v Ford*

*Motor Co,* 43 Mich App 114, 120; 204 NW2d 49 (1972), this Court found no error in the admission of evidence of the replacement cost less depreciation to establish the market value of a destroyed garage since it was uncontroverted that no market existed for the garage unless purchased as part of the plaintiff's entire business. Also, even where there was no indication of the absence of a market, this court in *Bayley, supra,* p 602, relied on evidence of the value of the building based on replacement cost less depreciation in reducing the damages awarded by the jury.

It is true, as defendants point out, that unlike *Losinski, supra,* and *Twenty-Two Charlotte, Inc, supra,* there was no evidence presented in the instant case establishing the absence of a market for the home or the personalty. Thus, defendants argue, plaintiffs were required to submit proof of the property's market value, *i.e.,* the price which could have been obtained at a private sale, through some method other than replacement cost less depreciation, such as an appraisal of the property, the valuation of the home for property tax purposes, or the selling price of similar homes in the area. We agree that market value is the applicable measure of plaintiffs' damages, but do not agree that plaintiffs' evidence based on replacement cost less depreciation was inadequate to present prima facie proof of the amount of damages.

In another case involving the measure of damages for injury to property, this Court stated "there is and should be no fixed rule for measuring compensation in cases such as this". *Baranowski v Strating,* 72 Mich App 548, 562; 250 NW2d 744 (1976), *lv den* 399 Mich 881 (1977). (Footnote

omitted.) The general principle is that proof of the amount of damages may not be founded on mere conjecture of speculation, but mathematical certainty is not required. *Wolverine, supra,* pp 244-245.

It is important to recognize that the property destroyed in this case was a home, being unique real property, and its contents, for which only a second-hand market existed. This is not a case, for example, involving a business's loss of its merchandise, items which are not unique and for which a ready retail market exists, thus facilitating establishment of the price at which the items could be sold. Also, it must be borne in mind that the property injured in the present case was totally destroyed, thus making a post-injury appraisal of the property impossible. The replacement cost less depreciation method of valuation has been recognized as indicative of market value. *Twenty-Two Charlotte, Inc, supra; Losinski, supra; Bayley, supra.* We do not believe that it can be said, under the circumstances of this case, that this method of valuation is so inferior to the other methods by which the market value of plaintiffs' property could be established that plaintiffs' proofs submitted under this method should be deemed inadequate as prima facie evidence of the amount of damages. Measure of market value through pre-injury appraisals (if any), the original purchase price of the property, the valuation of the home for tax assessment purposes, or the selling price of similar homes, are not necessarily more accurate methods than replacement cost less depreciation. To the extent methods other than replacement cost less depreciation might be more reliable based on the particular facts of the case, defendants are free to introduce other proofs and so argue; the

weight to be given the evidence is a matter for the fact finder.

We conclude that plaintiffs' proof of damages based on the replacement cost less depreciation of the home and personal property destroyed by the fire was sufficient to present prima facie proof of the amount of damages, and therefore the court erred in directing a verdict for defendants. In view of this holding, we must now address defendant Blaser's claim on cross-appeal that the court erred in permitting plaintiffs' witness, Mr. Ryan, to testify as an expert.

A witness may be qualified to testify as an expert based on his or her knowledge, skill, experience, training, or education. MRE 702. Whether a witness is qualified to testify as an expert is a matter within the trial court's discretion, *Siirila v Barrios*, 398 Mich 576, 591; 248 NW2d 171 (1976), and this Court will not reverse the trial court's admission or exclusion of expert testimony absent a clear abuse of discretion, *Syrowik v Detroit*, 119 Mich App 343, 347; 326 NW2d 507 (1982). The gist of defendant Blaser's contention on appeal is that Ryan was not qualified to render expert testimony in support of plaintiffs' claim that the wood stove was negligently designed because Ryan had never himself designed a wood stove, had not prior to this case analyzed or tested a wood stove, and had not published any articles or taken any courses specifically dealing with wood stoves.

Ryan held a bachelor's and a master's degree in mechanical engineering and had nearly completed the requirements for a second master's degree in engineering and a doctorate in safety engineering. For the past six years prior to trial, he was the owner of a certified materials testing laboratory where he engaged in testing various products for

compliance with safety standards. He testified that his laboratory is licensed and qualified to test a wood stove for safety, and that he had previously tested a number of industrial furnaces. We will not begin to review his extensive work experience as an engineer, except to note that Ryan had previously designed kilns, as well as air-conditioning, ventilation, and heating systems. Ryan testified that a mechanical engineer has the necessary knowledge to design a wood stove, and that he was familiar with all the principles which would be involved in designing a wood stove. The trial court did not abuse its discretion in determining that Ryan was qualified to render expert testimony regarding the design of the wood stove. There was ample evidence establishing that Ryan had the requisite expertise, despite the fact that he had never previously undertaken the design or testing of the particular product involved in this case, a wood stove.

Reversed and remanded for a new trial. Costs to plaintiffs-appellants.